STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,

v.

Darrell L. BOLTON, Respondent.

OBAD No. 861.
SCBD No. 3510.

Supreme Court of Oklahoma.

May 2, 1989.

K. Lynn Anderson, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Darrell L. Bolton, Tulsa, pro se.

OPINION

ALMA WILSON, Justice:

Respondent lawyer was accused by Petitioner Bar Association of professional misconduct sufficient to warrant professional discipline.

Thereafter, respondent stipulated to the following agreed facts and conclusions of law concerning three counts, which stipulations were accepted and approved by each

---

of the three members of the Professional Responsibility Tribunal.

## STIPULATIONS OF FACT AS TO COUNT I

[1] In early 1986, James Michael Kennon (hereinafter Kennon), d/b/a Farmers Wholesale Outlet, entered into an oral partnership agreement with David Bruce (hereinafter Bruce), of Onieda, Tennessee. Bruce was to provide the financial backing and Kennon was to run a farming operation in Oklahoma.

[2] During April, 1986, Kennon sought to retain Respondent to represent the business. At the time Kennon approached Respondent for representation, Kennon furnished brochures and publications which apparently showed Kennon to be a reputable businessman.

[3] As a part of his initial representation, Respondent reviewed and developed contracts for Kennon. Kennon and Respondent also discussed Respondent acting as in-house counsel once the business was a successful venture. In addition, in late May, 1986, Kennon asked Respondent to assist Kennon in purchasing farm equipment using Respondent's trust account as a banking device because Farmers Wholesale Outlet had not yet opened a bank account. Respondent received assurances from both Bruce and Kennon that funds of Bruce would be wired to Bolton's trust account to cover the equipment purchases. Respondent, thinking that he was providing a valuable service to his client, and knowing there were no other client funds in the trust account, agreed to this use of his trust account.

[4] On or about May 24, 1986, Kennon went to Enlow Auction Company and purchased farm equipment worth $38,410.00 at auction. Prior to the purchase, Bruce assured the Enlows Kennon had the financial backing of Bruce and that the purchasers would be paid from Darrell Bolton's trust account.

[5] On or about May 28, 1986, Kennon called Respondent and requested that Respondent write a check from Respondent's trust account to Enlow Auction for the equipment, as time was of the essence and Bruce was wiring the funds to cover said purchase into Respondent's trust account the following morning. Kennon indicated he needed the check that day as Enlow refused to release the equipment until payment was received, and Kennon had an immediate need for said equipment.

[6] After telephone conversations with both Kennon and Bruce, on or about May 28, 1986, at approximately 5:30 p.m., Kennon requested and Respondent did write check no. 260 drawn on "Darrell L. Bolton, Attorney at Law, Trust Account", Account No. 181885–8 held at the Bank of Oklahoma, Lewis Center, for $38,410.00 payable to Enlow Auction Company for said equipment. Respondent delivered the check to Enlow.

[7] At the time Respondent issued the check, he knew said trust account contained *no* funds of Farmers Wholesale Outlet or Bruce to cover the check, nor any other client funds, and was relying on the word of Bruce and Kennon that the wire transfer would be made the next day.

[8] Trusting the validity of the Bolton trust account check, Enlow Auction released the equipment to Kennon. Enlow endorsed the check and deposited it through normal banking channels. Check no. 260 was returned to Enlow marked "insufficient funds" on May 29, 1986.

[9] Enlow then contacted Respondent Bolton who told Enlow the money to cover the $38,410.00 check was being wired and that Enlow should run the check back through the bank. Enlow placed the check back through banking channels a second time, and check no. 260 was again returned for insufficient funds on June 4, 1986, as the wire transfer from Bruce was never made.

[10] When no money was wired as promised, the $38,410.00 check was not covered, and Respondent determined, he, as well as Mr. Enlow had been "conned", Respondent determined where the equipment could be found and told Enlow when and where the equipment could be retrieved. Enlow recovered the equipment, and re-ad-

vertised and re-sold same at public auction in order to mitigate his damages. After a full credit of all net proceeds from resale, Enlow suffered a loss as a result of the transaction in the amount of $15,523.00.

[11] Subsequently, Enlow filed suit on August 18, 1986, against Bolton, Kennon, and Bruce, in the District Court for Creek County, Case No. C–86–503. Judgment was entered against Respondent on August 21, 1987, in the sum of $41,000.00 plus interest based on Enlow's Motion for Summary Judgment. Respondent filed a Motion To Set Aside the Judgment and an agreed Judgment was entered against Respondent in the amount of $11,000.00, which Respondent is paying now in monthly installments.

## STIPULATED CONCLUSIONS OF LAW FOR COUNT I

[12] Said conduct is in violation of the mandatory provisions of DR 1–102(A)(4) and DR 6–101(A)(3) of the Code of Professional Responsibility, and constitutes grounds for professional discipline.

## STIPULATIONS OF FACT AS TO COUNT II

[1] On May 29, 1986, while awaiting the "purported transfer" of funds by Bruce, Darrell L. Bolton wrote additional trust account checks on behalf of Farmers Wholesale Outlet. He issued check no. 261 to Marvin Willis for $1,445.00, and check no. 262 to Fred Cox for $4,050.00. Respondent wrote both these checks under the same condition as check no. 260, that the trust account contained no funds from Farmers Wholesale Outlet to cover them, but was to receive funds immediately from Bruce by wire transfer. Said funds were allegedly now being held up at Bruce's bank by "red tape."

[2] Once Respondent learned check no. 260 written to Enlow Auction Company had been returned "insufficient funds", he immediately called "stop-payment" orders to the Bank of Oklahoma on May 30, 1986, for check nos. 261 and 262.

[3] On May 29, 1986, Kennon visited Ramsey–Allison Tractor Company in Bixby, Oklahoma, and agreed to purchase farm equipment for $9,500.00, plus two tractors valued at $31,750.00. Kennon furnished Jean Allison (hereinafter Allison), owner of Ramsey–Allison Tractor Company, Darrell Bolton's name and phone number and told Allison that Bolton would be paying for the equipment.

[4] Allison, knowing Spring was the best season for selling farm equipment, did not want to hold the equipment without verifying that Bolton was to pay for the equipment. If called to testify, Allison would state that on or about June 2, Allison called Respondent who confirmed Kennon would be purchasing only $9,500.00 equipment. If called to testify, Respondent would deny receipt of this call.

[5] On June 4, Respondent talked with Bruce long-distance and received assurances the "red tape" with the wire transfers had been cleared up. Bruce requested Respondent to issue a check to Allison for $9,500.00 and indicated money sufficient to cover the check would be wired immediately to Respondent's trust account. Bruce even had his banker in Tennessee speak to Respondent's banker in Tulsa concerning the wire transfer.

[6] On June 4, 1988, Respondent issued check no. 272 to Ramsey–Allison in the amount of $9,500.00 to purchase the tractors/equipment and gave the check to Kennon. Respondent obtained agreement from Kennon not to release the check to Ramsey–Allison until the money was actually transferred by Bruce.

[7] On June 5, 1986, Kennon and his brother, without authority of Respondent, delivered check no. 272 in the amount of $9,500.00 to Allison and obtained the equipment at that time.

[8] Respondent called Allison on June 5, 1988, to ask if Kennon delivered the $9,500.00 check to Allison. Allison told Respondent the check had already been deposited and the equipment given to Kennon. Thereupon, Respondent advised Allison of the problem and Kennon's lack of authority to release said check.

[9] On June 12, 1986, the $9,500.00 check was returned to Allison for insufficient funds. Allison then contacted Respondent and over the next several days attempted to obtain the money, and was advised by Respondent of the Kennon-Bruce "wire transfer".

[10] On or about June 25, 1986, Allison approached the Tulsa County District Attorney about the bogus check issued by Respondent.

[11] Respondent entered into an agreement for bogus check restitution and deferred prosecution with the Tulsa County District Attorney's Office on August 19, 1986.

[12] On April 9, 1987, Respondent made personal restitution on the Allison check to the Tulsa County District Attorney's Office payable to Ramsey-Allison.

## STIPULATED CONCLUSIONS OF LAW FOR COUNT II

[13] Said conduct is in violation of the mandatory provisions of DR 1-102(A)(4), and DR 6-101(A)(3) of the Code of Professional Responsibility, and constitutes grounds for professional discipline.

## STIPULATIONS OF FACT AS TO COUNT III

[1] Contemporaneously with the above-written checks, Respondent signed approximately twelve (12) other blank checks on the above-numbered trust account. Respondent signed each of the checks in blank leaving the payee, date, and amount to be filled in later. Without Respondent's permission or approval, Kennon removed the blank checks from Respondent's office, and issued the checks to various parties. When Respondent signed the checks in blank, he knew or should have known his trust account contained no funds of Farmers Wholesale Outlet to cover the checks, still awaiting transfer of funds from Bruce.

[The transcript of the bar proceedings reveals that after questioning the Respondent concerning these twelve checks the trial master of the tribunal ordered, upon the stipulation of the parties, that this paragraph be amended as follows: "The [sic] best of the knowledge of the parties hereto, no pecuniary loss was suffered by any person as a result of the signing of the 12 checks in blank."]

## STIPULATED CONCLUSIONS OF LAW FOR COUNT III

[2] Said conduct by Respondent violates the mandatory provisions of DR 6-101(A)(3) of the Code of Professional Responsibility and constitutes grounds for professional discipline.

## STIPULATED ALLEGATIONS TO ENHANCE DISCIPLINE

On January 14, 1983, Respondent received a Private Reprimand from the Professional Responsibility Commission for failure to sign and return an Order of Dismissal in a lawsuit where he was attorney of record, resulting in a dismissal of a subsequent appeal because the record on appeal contained no final appealable order.

## AGREED MITIGATION

[1] Respondent truly believed he was helping his client's business by allowing his trust account to be used by the client. Respondent now realizes it was poor judgment to allow his trust account to be used in this manner.

[2] Immediately upon learning no funds were forthcoming from Bruce, Respondent assisted Enlow in mitigating their damages by discovering where the farm equipment was located and insisting Enlow repossess the equipment and resell.

[3] Respondent has made complete restitution to Ramsey-Allison and is making monthly payments to Enlow to cover their loss.

## AGREED RECOMMENDATION FOR DISCIPLINE

[1] The parties agree and stipulate that appropriate discipline for Respondent's conduct herein would be a public censure from the Supreme Court.

[2] Additionally, it is agreed and stipulated between the parties that Respondent should be liable for the costs of this [sic] disciplinary proceedings.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, BY THIS COURT that the recommendation of the Professional Responsibility Tribunal is adopted, and Respondent herein be publicly censured by the Supreme Court of the State of Oklahoma. The costs of the proceedings in the discipline in the amount of $791.75 shall be borne by the respondent. They are to be paid immediately after this opinion becomes final.

HARGRAVE, C.J., OPALA, V.C.J., and HODGES, LAVENDER, SIMMS, DOOLIN and KAUGER, JJ., concur.