1999 OK 76

**STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,**

v.

**Robert L. BRIGGS, Respondent.**

**SCBD No. 4405.**

Supreme Court of Oklahoma.

Sept. 21, 1999.

Loraine D. Farabow, Assistant General Counsel, Oklahoma Bar Association Oklahoma City, Oklahoma, for Complainant.

Jim F. Gassaway, Tulsa, Oklahoma, for Respondent.

HARGRAVE, V.C.J.

¶ 1 Robert L. Briggs (Respondent), OBA No. 10215, was admitted to the practice of law in Oklahoma and in Texas in 1983. His official roster address is 405 South Boulder, Suite 400, Tulsa, Oklahoma, 74103. This matter was commenced pursuant to Rule 6.6 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. Ch. 1, App. 1–A, and is presented on joint stipulations of fact and agreed recommendation as to discipline. The Respondent has stipulated that his conduct violated Rules 1.3 and 5.2 RGDP [1], and Rules 1.15(a)(b)(c) and 8.1(b) of the Oklahoma Rules of Professional Conduct (ORPC) [2]. The Bar alleges, but Respondent denies, violation of Rule 1.4(b), RGDP [3].

COUNT I

¶ 2 Count I involves failure to keep the property of third persons separate from the lawyer's own property, a violation of Rule 1.15, ORPC. In 1992, Respondent represented Olga Guerrero in a divorce proceeding. As security for his fee, Respondent took a possessory lien on 173 shares of Rockwell International stock, represented by two certificates in Olga Guerrero's name, which Respondent placed in Mrs. Guerrero's billing file. The divorce was granted on March 31, 1994, and the stock was awarded to Olga Guerrero and Emigdio Guerrero, her ex-husband, in equal shares.

¶ 3 For some time thereafter, Respondent attempted to collect his attorney fee of $4,627.08 from Mrs. Guerrero. Mrs. Guerrero failed to pay him, so her account was turned over to a collection agency. Unbeknownst to Respondent, Mr. Guerrero had been attempting to obtain his half of the stock from his former wife. After being contacted by the collection agency, Mrs. Guerrero told Respondent that she wanted the fee paid from sale of the stock that he

1. Rule 1.3, Rules Governing Disciplinary Proceedings, states that the commission by any lawyer of any act contrary to prescribed standards of conduct shall be grounds for disciplinary action. Rule 5.2, Rules Governing Disciplinary Proceedings, states that the failure of a lawyer to respond as provided by the rule, shall be grounds for discipline.

2. Rule 8.1(b), Oklahoma Rules of Professional Conduct provides that in a disciplinary matter, a lawyer should not knowingly fail to respond to a lawful demand for information from a disciplinary authority.
   Rule 1.15. Oklahoma Rules of Professional Conduct—Safekeeping Property
   (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyers own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
   (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
   (c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

3. Rule 1.4(b) RGDP provides:
   "Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set-off for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services."

was holding. Respondent had Mrs. Guerrero endorse the stock certificates and he then sold the stock on August 28, 1996 for $9,425.17. Respondent gave Mrs. Guerrero $2,314.47, the balance remaining from the sale of the stock after deducting his attorney fee and the costs of collecting the fee.

¶ 4 On June 19, 1997, ex-husband filed a motion to compel Mrs. Guerrero to deliver the stock. Shortly thereafter, ex-husband's attorney learned that the shares of stock had been in Respondent's possession and had been sold. Respondent and the attorney met and Respondent admitted that he had made a mistake and stated that he would be willing to pay ex-husband all the money that would have been his that was still in Respondent's possession, plus interest.

¶ 5 Respondent met with Mr. Guerrero's attorney and, believing that they had worked out an agreement, mailed a check payable to Mr. Guerrero in the amount of $2,512.78 and a release of all claims, to Mr. Guerrero's attorney. Enclosed was a letter in which Respondent explained that Mrs. Guerrero had insisted on sale of the stock in order to pay the attorney fee and costs incurred in the divorce action. Respondent admitted that he had forgotten that the divorce decree awarded the stock to Mr. and Mrs. Guerrero in equal shares.

¶ 6 Mr. Guerrero rejected Respondent's tender and on December 10, 1997, Respondent was added as a third-party defendant in the suit against Mrs. Guerrero to recover the stock. On September 8, 1998, judgment was entered against Mrs. Guerrero and against Respondent, based upon conversion, in the amount of $4712.59, plus interest from September 24, 1996. The judgment did not include an award for the $2,078.63 that Mr. Guerrero paid in attorney fees and court costs to recover his share of the proceeds from sale of the stock. The judgment gave Respondent the right to seek indemnification from Olga Guerrero on his cross-claim. Respondent has never sought indemnification from his former client. The day after the judgment was entered against him, Respondent delivered a check to Mr. Guerrero's attorney, in the amount of $5,592.96, made payable to Mr. Guerrero and his attorney.

¶ 7 On May 10, 1998, Mr. Guerrero's attorney, Jerry Witt, filed a grievance against the Respondent with the Oklahoma Bar Association. It was stipulated that Mr. Witt did not believe that there was any intent to defraud, but rather that Respondent was guilty of neglect in his lack of memory of the provisions of the divorce decree and his lack of knowledge concerning his duty to safeguard the property. On January 11, 1999, after a discussion with the general counsel's office, Respondent tendered a cashier's check to Mr. Guerrero's attorney, payable to Mr. Guerrero, in the amount of $2,078.00 for Mr. Guerrero's attorney fees and costs incurred in the stock-recovery action.

¶ 8 As noted at the outset, Respondent stipulated to violation of Rules 1.3, RGDP and Rule 1.15(a)(b)(c) of the ORPC and stipulated that these violations constitute grounds for professional discipline.

## COUNT II

¶ 9 Count II involves Respondent's failure to promptly respond to the grievance. Respondent was sent a copy of the grievance on June 15, 1998 and advised that a formal investigation had been opened in the matter. Respondent did not reply. On July 21, 1998, the Bar sent Respondent a letter by certified mail. The letter was not returned and complainant did not receive a response within the five-day period specified. Respondent stated that he mailed the letter within the specified time, but that it was returned to his office and he had to mail it again.

¶ 10 The Respondent wrote to the Bar by letter dated July 17, 1998, in which he stated that he was confused by the letter of June 15 and that he was unable to respond without more information. Respondent did, however, deny the allegations as he understood them and complained that they were without merit. This letter was not received by the Bar until July 31, 1998. The Bar sent a letter dated August 6, 1998, outlining the nature of the grievance against Respondent and requesting a response to three specific questions with ten days from the date of the letter. Respondent did not respond. Respondent denies ever receiving this letter.

On August 31, 1998, Respondent was served with a subpoena duces tecum commanding him to appear on September 14, 1998. On that date Respondent's deposition was taken by Complainant at the Oklahoma Bar Center. Respondent admitted that he received the June 15 letter and admitted that he did not respond in a timely manner.

¶ 11 The parties have agreed that Respondent's misconduct regarding Count II violated the mandatory provisions of Rule 8.1(b) of the Oklahoma Rules of Professional Conduct and Rule 5.2 of the Rules Governing Disciplinary Proceedings and constitutes grounds for discipline.

## MITIGATION

¶ 12 In mitigation, it is offered that Respondent has acknowledged his misconduct and has expressed remorse for his actions. Respondent has taken steps to implement new office procedures, including review and counseling by a mentor, in order to prevent future mistakes. Respondent has made full restitution.

## DISCUSSION

¶ 13 The matter was heard before the Professional Responsibility Tribunal (PRT) on March 20, 1999. At the hearing, the Bar dismissed its allegation of violation of Rule 1.4(c) RGDP, which provides that theft, by conversion or otherwise, of the funds of a client shall, if proved, result in disbarment. The PRT heard the testimony of Respondent Briggs, reviewed the documentary evidence and character affidavits presented, and considered the Joint Stipulation, which contained agreed findings of fact and conclusions of law. The character affidavits were from five attorneys who had practiced with Mr. Briggs, a banker client and an employer from twenty-six years ago, all of whom vouched for Respondent's reputation for veracity and trust. The PRT concluded:

1) that there was no violation of Rule 1.4(b), Rules Governing Disciplinary Proceedings, because the stock certificates had been entrusted to Respondent by his client for the specific purpose of security for fees and when the stock came into his possession, Respondent had a valid lien thereon;

2) that Respondent's violation of Rule 1.15(a)(b)(c) was the result of negligence in dealing with property entrusted to him, rather than an intentional commingling or misappropriation of client funds. Although Respondent was negligent in failing to identify the stock certificates in a manner that would have alerted him that he did not have the right to sell all of the stock, his failure to do so is not the kind of egregious conduct generally seen in conversion cases involving fraud, deceit or intentional commingling of the funds. Respondent believed that the funds belong to his client and that he had the right to sell the stock, with the client's consent, in order to satisfy his lien.

3) that as to Count II, Respondent admitted violation of Rule 8.1(b), ORPC and Rule 5.2, RGDP, which is grounds for discipline.

¶ 14 For their recommendation as to imposition of discipline, the PRT found that the parties' joint stipulation for public censure, together with a one-year period of probation, was in line with the discipline imposed by this Court in similar cases where negligence, rather than deceit or fraud, is involved in the attorney's dealing with property entrusted to his care. The PRT recommended that the Respondent be publicly censured and a that one-year probation be imposed, subject to the condition that Respondent obtain an additional twelve (12) hours of continuing legal education, focusing on law office management and ethics, and that he comply with the requirements of the Oklahoma Bar Association's Office Management Program, including monthly discussions to review office procedures, all at Respondent's cost. The Respondent has agreed to obtain the additional twelve hours of continuing legal education and to comply with the OBA's Office Management Program.

¶ 15 The parties did not stipulate that the Respondent violated Rule 1.4(b) RGDP. We have reviewed the record de novo and find that the facts do not support a violation of Rule 1.4(b). Rule 1.4(b) provides:

"Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set-off for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services."

The stock was given to Respondent to secure payment of his fee; thus, when the stock came into Respondent's possession it was impressed with a possessory lien, falling within the exception to the rule: "coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services." Though the ownership of the property later changed, and Respondent's interest in the property was decreased, the manner in which Respondent received the stock, for Rule 1.4(b) purposes, was the same. The rule is violated when a lawyer takes property entrusted for a specific purpose and uses it for some other purpose. See, *State ex rel. Oklahoma Bar Ass'n v. Cummings*, 1993 OK 127, 863 P.2d 1164 (applying funds received for deposition expenses toward a claimed attorney fees). The facts in the case at bar simply do not fall within the purview of Rule 1.4(b), which contains an element of intent. For example, in *State ex rel. Oklahoma Bar Ass'n v. Wilkins*, 898 P.2d 147 (Okla.1995), Wilkins was found to have engaged in conduct involving dishonesty, fraud, deceit or misrepresentation where he paid client only 29% of an agreed 40% contingency fee and did not pay any of the medical bills that he had agreed to pay on the client's behalf. We found this conduct violated Rule 8.4(c) of the Rules of Professional Conduct, *as well as* Rule 1.4(b) of the Rules Governing Disciplinary Proceedings.

## DISCIPLINE

¶ 16 Because the Respondent has stipulated to violations of the ORPC and RGDP, it remains only for us to impose the appropriate discipline, after a de novo review of the record. We have examined the cases, and the record herein, and find that Respondent's conduct falls within those cases imposing discipline of public censure.

¶ 17 In *State ex rel. Oklahoma Bar Ass'n v. McManus*, 852 P.2d 727 (Okla.1993), McManus commingled his personal funds with his client's trust account. The trust account was garnished for a personal debt and his personal funds were taken. No client funds were taken in the garnishment and Respondent did not convert or misuse the client's funds. We noted that the discipline for commingling has varied from public censure to disbarment, depending generally on the degree of harm caused the client. 852 P.2d at 728. In addition to the violation of Rule 1.15(a), McManus stipulated to violations of Rules 1.3 and 1.4 of the ORPC, for neglect of a matter and failure to keep the client informed. The client was not financially harmed, nor was her case prejudiced by McManus' conduct. Two counts involved failure to respond to the disciplinary authority. We accepted the agreed recommendation for discipline of public censure and ordered Respondent to pay costs of the action.

¶ 18 In *State ex rel. Oklahoma Bar Ass'n v. Bolton*, 773 P.2d 741 (Okla.1989), Bolton stipulated that he allowed a client to use his trust account as a business account for the purchase of farm equipment for client's business. There were no client funds in the trust account. Numerous insufficient funds checks were written on the account. One payee, Enlow Auction Company, suffered a loss of $15, 523.00 as a result of the transaction. Enlow filed suit against Bolton and his client and an agreed judgment was entered against Bolton in the amount of $11,000.00. Bolton was paying off the judgment in monthly installments. Bolton was contacted by the Tulsa county district attorney on a bogus check charge. Bolton entered into an agreement with the district attorney's office for restitution and deferred prosecution. Bolton previously had received a private reprimand from the Professional Responsibility Commission for failure to sign and return an order of dismissal in a lawsuit, resulting in dismissal of an appeal as premature. In mitigation, it

was recognized Bolton's motives were good in attempting to help his client's business and Bolton had realized that he used poor business judgment in permitting his trust account to be used in such a manner. Bolton assisted Enlow in mitigating their damages and assisted them in repossessing and reselling the equipment. Respondent made complete restitution in the bogus check matter and is making monthly payments to Enlow. On de novo review, we adopted the recommendation of the PRT for public censure and payment of costs.

¶ 19 In *State ex rel. Oklahoma Bar Ass'n v. Stephenson*, 798 P.2d 1078 (Okla.1990), we imposed discipline of public censure and one-year probation with conditions, including supervision by a member of the Lawyers Helping Lawyers committee of the Oklahoma Bar Association. The PRT had recommended suspension for six-months, but after de novo review, we found that recommendation too harsh. Stephenson received payments on behalf of his client, from the client's debtor, over a fifteen-month period. Stephenson was to deposit the payments into his trust account, retain his fee of 40% of any monies recovered, and disburse the balance to his client. The debtor made seven payments of $100 each and one payment of $200. Respondent's trust account records during this period reflected balances well below the amounts collected. After the $200 payment was received, Stephenson issued a check to the client from his trust account, in the amount of $500. Stephenson made no other payments to his client. Stephenson had not been disciplined previously and the parties stipulated that his misconduct resulted from inattention, negligence and alcohol abuse. The case was presented on proposed stipulations of fact and conclusions of law, with an agreed recommendation for discipline of suspension from the practice of law for a six-months and a one-year probation period thereafter, subject to specific conditions. Upon de novo review, we determined that under the facts of the case, the six-month suspension was unduly harsh. We imposed discipline of public censure and ordered res-titution in the amount of $40.00 to the client. We placed Stephenson on probation for one year and ordered him to comply with the stipulated terms.

¶ 20 Having conducted a de novo review of the record in the case at bar, we agree with the PRT that the appropriate discipline to be imposed is public censure. The Respondent in this case received stock certificates that were solely in his client's name, as security for his fee for handling her divorce. He placed those certificates in the client's file. Respondent spent almost two years attempting to collect his attorney fee from his client. Had he remembered that he held the stock certificates, it would have been unnecessary to turn the matter over to a collection agency. The client directed Respondent to sell the stock to use for payment of his fee. Respondent failed to recall that the divorce decree awarded one-half interest in the stock to the husband, and he failed to check the divorce decree to make sure that the stock was still owned by his client.[4]

¶ 21 After he learned of the error on his part, Respondent readily admitted his mistake and attempted to resolve the matter with Mr. Guerrero's attorney. Mr. Guerrero refused the Respondent's check, and judgment was entered against Respondent for one-half of the amount the stock was sold for. Respondent promptly paid the judgment with interest and Respondent subsequently paid Mr. Guerrero's attorney fees incurred in seeking to recover his interest in the stock. Respondent admitted his mistake, expressed remorse for his actions and has stipulated that he violated the rules of professional conduct. The Respondent has suffered significant financial detriment because of his mistake. Respondent has instituted procedures in his office to prevent such oversights in the future. The Respondent did not seek indemnification from his client, although he was entitled to do so. Respondent has accepted the consequences of his mistake and has shouldered the financial and ethical burdens therefor. Respondent submitted references from fellow attorneys and by a former

---

4. The client did not tell the Respondent that her husband had been attempting to collect his interest in the stock from her, nor did she remind Respondent, when it was apparent that he had forgotten, about her husband's ownership interest in the stock.

client and a former employer, all attesting to Respondent's character and good reputation. We find it unnecessary, given the facts of the case, to place the Respondent on probation. As discussed in the following paragraph, Respondent has voluntarily agreed to additional CLE and law office management programs.

 ¶ 22 The Respondent should be particularly admonished, however, for his failure to respond in a timely manner to the Bar's requests for information. Let this serve as a reminder to attorneys that failure to timely respond to the Bar's request for information is *in itself* grounds for discipline. Rule 5.2, Rules Governing Disciplinary Proceedings, provides that the failure of a lawyer to answer within twenty days after service of the grievance, or recital of facts or allegations, shall be grounds for discipline. Respondent's testimony reflects that he did respond to the bar's complaint, but that the letter was returned to him and had to be mailed again. He testified that he spoke to one of the Bar's investigators who told him just to send the letter again. Respondent testified that he never saw the August 6 letter, although it may have come to his office during a time that he was moving the office. Respondent admitted that his sloppy office-keeping procedures contributed to his problems in responding to the Bar's requests. Respondent has voluntarily agreed to attend an additional twelve hours of CLE programs in the area of law office management, and voluntarily agreed to work with Jim Calloway, a risk assessment manager for the Oklahoma Bar Association's law office management program at his own expense.[5] Respondent testified that he welcomed the additional programs as a means to improve his practice of law.

¶ 23 The Complainant has filed an application to assess costs against the Respondent in the amount of $677.81. Respondent has filed no objection to the amount of the costs and previously stipulated that he is responsible for payment of costs of the matter. Ac-

cordingly, Respondent is ordered to pay the costs of this disciplinary proceeding, in the amount of $677.81, within ninety (90) days from the date that this opinion becomes final.[6]

RESPONDENT IS PUBLICLY CENSURED AND ORDERED TO PAY THE COSTS OF THIS DISCIPLINARY PROCEEDING IN THE AMOUNT OF $677.81, WITHIN NINETY (90) DAYS FROM THE DATE THIS OPINION BECOMES FINAL.

¶ 24 CONCUR: SUMMERS, C.J., HODGES, LAVENDER, SIMMS, KAUGER, JJ.

¶ 25 CONCUR IN PART; DISSENT IN PART: WATT, J.

¶ 26 NOT PARTICIPATING: OPALA, J.

---

5.  *See, State ex rel. Oklahoma Bar Ass'n v. Mayes, 1999 OK* 9 ¶ 19, 977 P.2d 1073, 1078. ("... respondent has agreed to obtain law-practice management assistance.")

6.  Rule 6.6 RGDP provides that failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court.