2013 OK 19

**STATE of Oklahoma, ex rel., OKLA-
HOMA BAR ASSOCIATION,
Complainant,**

v.

**Lagailda F. BARNES, Respondent.**

**SCBD No. 5853.**

Supreme Court of Oklahoma.

April 2, 2013.

As Corrected April 4, 2013.

Gina Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Respondent appearing pro se.

REIF, V.C.J.:

¶1 On February 21, 2012, the Oklahoma Bar Association, acting through the Chairman of the Professional Responsibility Commission and the General Counsel, filed a complaint with the Office of the Chief Justice against attorney Lagailda F. Barnes (Respondent). The complaint sought discipline of Respondent for alleged professional misconduct, pursuant to Rule 6, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2001, Ch. 1, App. 1–A. The complaint alleged that Respondent violated Rule 1.3, RGDP, 5 O.S.2011, Ch.1, App. 1–A, and Rules 1.15 and 8.4(c), Rules of Professional Conduct (RPC), 5 O.S.2011, Ch. 1, App. 3–A. The complaint asked this Court to impose discipline for such misconduct as the Court may find equitable and proper.

¶2 The pertinent facts upon which the complaint was based are as follows. In August 2008, Respondent received funds in the amount of $48,496.12 on behalf of her client who was in prison at the time. These funds came from a probate case. Respondent had authority to receive and disburse these funds, pursuant to a power of attorney executed by the client. Respondent agreed that she would periodically disburse funds during his incarceration as he may direct and safekeep the remainder until his release from prison.

¶3 When released from prison in March 2011, the client requested all of his remaining funds to be delivered to him in lump sum. Respondent initially told the client that the funds were "unavailable," but eventually revealed that she had spent the funds. She promised she would "recoup it as quickly as possible." At this time, Respondent gave client $1,000 and told him that she was going to get a loan to repay the entire amount. From March to June 2011, Respondent had several conversations with client and made two more payments of $1,000. In each conversation with client, Respondent told client he had the right to file a complaint with the bar association or report this matter to the district attorney. Respondent's initial application for a loan was denied.

¶4 In June, 2011, Respondent made a second application for a loan. This loan took almost three months to complete, but when approved, its proceeds were used to repay client. During the time the loan was being processed, Respondent went to Mississippi, was hospitalized, and did not return to Oklahoma until September 27, 2011. Upon her return to Oklahoma, she told client that she would repay him from the loan that was due to close on September 30, 2011.

¶5 When client did not hear from Respondent at the beginning of September, the client hired a new attorney to help him recoup the funds. On September 19, 2011, the new attorney wrote a letter to the General Counsel of the Bar Association stating that he had been in contact with Respondent and that while she had promised payment, it had not been forthcoming to date. Less than three weeks later, the new attorney sent the General Counsel a letter on October 7, 2011, reporting that Respondent came to his office and paid the client in full plus interest. The letter further stated: "[Respondent] had worked very hard to obtain these funds and was very concerned about making [the client] whole in this transaction. Health problems simply prevented her from handling it in a timely manner." The new lawyer did not charge client for the assistance he provided in facilitating the repayment to client.

¶6 On March 28, 2012, a panel of the Professional Responsibility Tribunal (PRT) held a hearing concerning the allegations in the complaint. Respondent appeared before the PRT. The aggrieved client appeared and confirmed that he had been repaid with interest. He told Respondent it was nice to see her and related that Respondent and her husband were "good people." The investigator for the Bar Association testified that Respondent was very cooperative and volun-

tarily produced all the records pertaining to the matter.

¶ 7 In addition to the testimony of the aggrieved client and the Bar Association's investigator, the PRT received testimony from Respondent and four witnesses called by Respondent. The PRT also admitted exhibits offered by the General Counsel and Respondent. Based upon this evidence, the PRT found Respondent violated Rule 1.3, RGDP, 5 O.S.2011, Ch.1, App. 1–A, and Rules 1.15 and 8.4(c), Rules of Professional Conduct (RPC), 5 O.S.2011, Ch. 1, App. 3–A. In deciding the discipline to recommend for these violations, the PRT took into account that Respondent (1) made full restitution to the client plus interest, (2) had no previous Bar disciplinary actions taken against her, and (3) cooperated with the Bar upon filing the complaint. The PRT felt these factors mitigated disbarment as discipline and concluded that more appropriate discipline would be suspension for two years and a day.

¶ 8 In briefing before this Court, the General Counsel concurred with the PRT's recommendation of suspension for two years and a day. In doing so, the General Counsel also took into consideration that Respondent (1) admitted all allegations against her in her answer, (2) provided all requested documents to the Bar Association's investigator, (3) expressed remorse for her actions, and (4) repaid client with interest.

¶ 9 In disciplinary matters, this Court possesses exclusive original jurisdiction. *State of Oklahoma ex rel. Oklahoma Bar Association v. Phillips*, 2002 OK 86, ¶ 15, 60 P.3d 1030, 1036. "Our responsibility is ... to inquire into and gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts and of the legal profession." *Id.* at ¶ 21, 60 P.3d at 1037 (footnote omitted.) "Discipline is imposed to maintain these goals rather than as punishment for the lawyer's misconduct." *Id.* Disciplinary action is also administered to deter the attorney from similar future conduct and to act as a restraining vehicle on others who might consider committing similar acts. *Id.*

¶ 10 "In deciding whether discipline is warranted and what sanction, if any, is to be imposed for the misconduct charged, this court conducts a full-scale, nondeferential, de novo examination of all relevant facts." *State ex rel. Oklahoma Bar Association v. Wallace*, 1998 OK 65, ¶ 6, 961 P.2d 818, 822–23 (footnotes omitted). While helpful, the recommendations of the PRT are not binding. *Id.*

¶ 11 "The severity of the sanction for professional misconduct depends upon all the circumstances, including the wilfulness and seriousness of the violations, the respondent's willingness to acknowledge the seriousness of the wrongdoing and to take responsibility for it, and the degree of cooperation the respondent demonstrates in the investigation and resolution of the grievances." *Id.*, ¶ 32, 961 P.2d 818, 828. "We evaluate a claim that an attorney has mishandled a client's funds using three increasing levels of culpability: (1) commingling; (2) simple conversion; and (3) misappropriation, also known as theft by conversion or otherwise." *State ex rel. Oklahoma Bar Association v. Combs*, 2007 OK 65, ¶ 13, 175 P.3d 340, 346. In cases of misuse of a client's funds, there is a wide range of discipline, depending generally on the degree of harm caused the client. *State of Oklahoma ex rel. Oklahoma Bar Association v. Briggs*, 1999 OK 76, ¶ 17, 990 P.2d 869, 873.

¶ 12 Upon de novo review, we find by clear and convincing evidence that Respondent violated Rule 1.3, RGDP, and Rules 1.15 and 8.4(c), RPC, by converting her client's funds, and that such violations constitute professional misconduct. Based on the record presented, we conclude that the appropriate discipline for such misconduct is the suspension of Respondent's license to practice law for two years, instead of two years and one day. We are reminded that discipline must be decided on a case-by-case basis because each situation involves unique transgressions and mitigating factors. *Phillips*, ¶ 21, 60 P.3d at 1037.

¶ 13 First, it is reasonably clear that Respondent did not act with intent to permanently deprive client of the funds in question nor show indifference to adverse conse-

quences that her conduct caused client. She acted with diligence to secure a loan to repay client and made incremental payments to client while the loan was processed. She undertook these efforts prior to disciplinary proceedings. By repaying client in full with interest, client suffered no irreparable harm.

¶ 14 Second, client acknowledged that Respondent informed him that he could pursue action against her by complaint to the Oklahoma Bar Association or District Attorney. Client accepted the incremental payments and worked with Respondent almost nine months to repay without resorting to such complaints or legal action. Only when client could not contact Respondent (when she was hospitalized in Mississippi) did he seek legal assistance and it appears that he did so to sue Respondent, not to file an OBA grievance. The lawyer with whom client consulted notified the General Counsel regarding this matter in fulfillment of his ethical duty. In the end, this lawyer believed that Respondent "worked very hard" to repay client and was "very concerned about making [client] whole."

¶ 15 Third, Respondent has acknowledged the seriousness of her wrongdoing to her client, the General Counsel, and the PRT. She has taken full responsibility for it, shown remorse and made every reasonable effort to minimize the impact of her wrongdoing on her client and the profession.

¶ 16 Last, due regard need also be given to the fact that Respondent has had no other grievances or ethical violations in eight years of practice prior to this incident. Due regard need also be given to as her past pro bono work in the Lawyers for Heroes project and her representation of clients who could not fully pay her for the work she performed.

¶ 17 While these circumstances do not excuse the misconduct that occurred, nor lessen the seriousness of that misconduct, they do deserve to be weighed in determining the appropriate discipline we impose to protect the public, the legal profession and administration of justice.

¶ 18 As a final matter, we find that Complainant Bar Association incurred costs in the amount of $960.47 for the investigation of the client grievances, the record, and the disciplinary proceeding, as set forth in Complainant's Application to Assess Costs. We further make payment of the costs a condition for reinstatement upon completion of the period of suspension.

**RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR TWO YEARS AND PAY THE COSTS OF THIS PROCEEDING AS A CONDITION OF REINSTATEMENT UPON COMPLETION OF THE PERIOD OF SUSPENSION.**

¶ 19 REIF, V.C.J., KAUGER, EDMONDSON, TAYLOR, COMBS, and GURICH, JJ., concur.

¶ 20 COLBERT, C.J., and WATT, J., concur in part; dissent in part.

¶ 21 WINCHESTER, J., dissents.