1997 OK 84

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Mark Gregory ROBB, Respondent.**

**SCBD No. 4219.**

Supreme Court of Oklahoma.

June 24, 1997.

Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Respondent not appearing.

ALMA WILSON, Justice:

¶ 1 The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, Mark Gregory Robb, with three counts of failure to respond, after numerous attempts to allow the respondent to answer formal grievances by three of the respondent's clients. Even after the complainant filed its complaint, the respondent took no action. On the date set for the hearing, the Professional Responsibility Tribunal heard the evidence without the respondent present, and found based on clear and convincing evidence that the respondent had violated the mandatory provisions of Rule 8.1(b) [1] of the Oklahoma Rules of Professional Conduct, and Rule 5.2 [2] of the Rules Governing Disciplinary Proceedings. In its report of findings of fact and conclusions of law, the Professional Responsibility Tribunal recommended a two year and one day suspension.

¶ 2 In Count I of the Complaint, the Bar Association reported that it received a written grievance from Jill S. Erickson against

---

1. Rule 8.1(b) provides that a lawyer in connection with a disciplinary matter shall not "knowingly fail to respond to a lawful demand for information from ... [a] disciplinary authority...." Oklahoma Rules of Professional Conduct, 5 O.S.1991, ch. 1, app. 3–A.

2. Rule 5.2 provides that after the General Counsel to the Bar Association files and serves a copy of the grievance upon the lawyer, that lawyer must make a written response containing a "full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct.... The failure of a lawyer to answer within twenty (20) days after service of the grievance ... shall be grounds for discipline." Rules governing Disciplinary Proceedings, 5 O.S.1991, ch. 1, app. 1–A.

the respondent for neglect.[3] On January 12, 1996, the Office of the General Counsel mailed a letter to the respondent requesting an answer to the grievance within two weeks. On January 17, 1996, the letter was returned with the envelope marked "attempted, not known." On February 20, 1996, the Office of the General Counsel mailed another letter, but the respondent failed to file a written response to the grievance within the twenty days allowed by Rule 5.2 of the Rules Governing Disciplinary Proceedings. The next letter was sent certified mail, return receipt requested on March 15, 1996, but it was returned with the envelope marked "moved, left no address." On April 1, 1996, the respondent was personally served with a subpoena duces tecum requiring that he appear at the Oklahoma Bar Center on Tuesday, April 16, 1996, at 10:00 a.m. The respondent made no appearance on that date.

¶3 In Count II, the Bar Association states it received a written grievance on April 25, 1996, from Edgar Summers forwarded by the Tulsa County Bar Association against the respondent.[4] Like Count I, this grievance was also for neglect. The respondent had not responded to inquiries addressed to him concerning the grievance from the Tulsa County Bar Association. The Bar Association sent a letter to the respondent's current roster address advising him to make a written response to the grievance within twenty days. As before, the envelope was returned, marked "moved, left no address." On June 6, 1996, the Office of the General Counsel mailed a letter by certified mail, return receipt requested, but it was marked, "return to sender, unclaimed." The respondent was again personally served with a subpoena duces tecum on June 26, 1996, requiring that he appear at the Oklahoma Bar Center on Wednesday, July 3, 1996, at 9:30 a.m. The respondent did not appear for his deposition on that day.

¶4 For Count III, the Bar Association alleged a continuation of the failure to respond, as in the first two counts. The Bar Association received on May 28, 1996, a written grievance from Manuel L. Peeples, Jr., against the respondent for neglect.[5] When

**3.** The letter of Jill S. Erickson stated that on April 27, 1995, she had spoken with the respondent by telephone for the purpose of retaining him to collect South Carolina court-ordered alimony and child support from her former husband who resided in Tulsa. On May 3, 1995, she sent him $150.00 to retain his services and to file suit if necessary. Ms. Erickson had complained to the Bar Association that she could not contact the respondent because he had changed his address without notifying her, and his telephone had been disconnected. The check cleared her bank on June 29, 1995. Thereafter, the respondent never returned her telephone calls. She asked the Bar Association's assistance in the return of her $150.00. In a second letter to the Bar Association, also entered as an exhibit, she stated that she was a single mother with two children to support, and could not count on child support. She wrote that $150.00 was a lot of money to her.

**4.** Complainant's exhibit number 16 contained a Tulsa County Bar Association Complaint Form from Edgar R. Summers, which the Tulsa County Bar Association forwarded after being unable to succeed in getting the respondent to talk to a lawyer investigator for the Tulsa Professional Responsibility Committee. The Complaint Form reveals that Mr. Summers employed the respondent on November 25, 1994, in a divorce, where Mr. Summers was the plaintiff. Mr. Summers gave the respondent two checks, one in the amount of $414.00 on November 25, 1994,

which includes notations of "350 DIV. FEE" and "64 FILING FEE." The other check is in the amount of $47.57, and dated February 8, 1995, with no notation of the purpose of the payment. Both checks appeared to be cashed rather than deposited in any attorney trust account. The endorsement on the reverse side of the checks had no stamp or account number, just the signature "Mark G. Robb." Mr. Summers stated in his complaint that he started calling the respondent in March 1995, but the respondent neither answered nor returned his calls, even though Mr. Summers left messages on an answering machine. In September Mr. Summers received his only message from the respondent, a letter explaining a jurisdictional delay between the Texas and Oklahoma courts, and that the respondent would contact Mr. Summers on Friday, September 22 concerning an order he was supposed to receive. Mr. Summers did not hear from the respondent again. By October, 1995, Mr. Summers wrote the respondent a letter asking him to withdraw and refund Mr. Summer's money. Mr. Summers finally hired another lawyer on November 20, 1995, a year after he had hired the respondent.

**5.** The third grievance, by Mr. Manuel L. Peeples, Jr., related that the respondent was representing him in a Tulsa County probate case. Like the other two clients, Mr. Peeples was unable to contact the respondent, even by leaving messages for him. He finally contacted and hired another

the Office of the General Counsel mailed a letter to the respondent at his current roster address, advising him of the grievance, and the letter was returned marked "not here." On July 12, 1996, the Bar Association through the Office of the General Counsel sent a letter by certified mail, return receipt requested, to his last known address. The green card was returned with a signature for receipt, "Mark G. Robb," on July 13, 1996. Nevertheless, no response was ever received from the respondent.

¶ 5   On October 20, 1996, at 1:50 p.m., the respondent was personally served with the Complaint, and a letter informing him that if he did not answer the complaint within twenty days, the charges against him would be deemed admitted. The papers included a Notice of Selection and Appointment of Trial Panel and Notice of Setting and Notice of Hearing. The proceeding was set for November 27, 1996, at 9:30 a.m. at the Bar Center on North Lincoln Boulevard in Oklahoma City. The respondent made no reply, verbal or written. He did not appear at the hearing.

¶ 6   The Bar Association presented one witness, an investigator for the Bar Association, and offered 25 exhibits into evidence, all of which were accepted and admitted. The evidence supported the allegations made in the complaint. The exhibits reveal that the respondent was suspended from the practice of law at the time of the November 27th hearing for failure to pay 1996 membership dues to the Bar Association, and failure to comply with the mandatory continuing legal education requirement for the year 1995. The letters to the Bar Association concerning the grievances of respondent's clients were also included.

¶ 7   The ultimate decision of the discipline to impose upon a lawyer in a bar matter rests with this Court after a *de novo* review of the record. *State ex rel. Oklahoma Bar Ass'n v. Butler,* 903 P.2d 872, 875 (Okla. 1995); *State ex rel. Oklahoma Bar Ass'n v. Carpenter,* 863 P.2d 1123, 1128 (Okla.1993). Our review of the record reveals that the respondent has completely ignored the obli-

gations he has pursuant to Oklahoma Rules of Professional Conduct, and the Rules Governing Disciplinary Proceedings. The grievances concerning neglect of cases, if proven, would violates Rule 1.3 of the Oklahoma Rules of Professional Conduct, "A lawyer shall act with reasonable diligence and promptness in representing a client," Rule 1.4, "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information," and Rule 1.15 concerning the safekeeping of property. But the respondent appears to have so little concern for his license that he has ignored not only the attempts of his clients to contact him, but also those of the Tulsa County Bar Association, and the General Counsel for the Oklahoma Bar Association.

¶ 8   It would appear that the respondent has abandoned the practice of law. He does not even offer any mitigation for his actions. In *State ex rel. Oklahoma Bar Ass'n v. McCoy,* 912 P.2d 856 (Okla.1996) the respondent involved had nine counts of professional misconduct charged against him. Like the respondent in the case at bar, he never answered the complaints against him, responded in any manner to the proceedings, did not appear at the hearing before the Professional Responsibility Tribunal, nor file a brief with this Court. The Professional Responsibility Tribunal in that case recommended disbarment, and the Bar Association urged this Court to accept the recommendation. *McCoy,* 912 P.2d at 857. With all Justices concurring, we held: "The Respondent's utter disregard for the responsibilities placed on him as a lawyer and for the procedures of this Court leave us no alternative other than to accept the recommendation of the Professional Responsibility Tribunal and order Respondent's disbarment." *McCoy,* 912 P.2d at 857. Unlike *McCoy,* the respondent in the case at bar was not charged with the neglect stated in the grievances, but only with the failure to respond to the Bar Association's investigation of the grievances.

---

lawyer, but the respondent had records of "vital importance" that he needed to give to his present

lawyer.   He was asking the Bar Association for help in locating the respondent.

¶ 9 Complainant's Brief in Chief concludes that this Court should adopt the findings of fact, conclusions of law, and recommended discipline of the Trial Panel. As in *McCoy*, we agree with this recommendation. Respondent must timely pay the costs incurred in this proceeding as a condition of reinstatement, in the amount of $603.65, pursuant to Rule 6.16 Rules Governing Disciplinary Proceedings, 5 O.S.1991, ch. 1, app. 1–A.[6]

¶ 10 RESPONDENT SUSPENDED FOR TWO YEARS AND ONE DAY AND ORDERED TO PAY COSTS.

¶ 11 KAUGER, C.J., SUMMERS, V.C.J., and LAVENDER, HARGRAVE and WATT, JJ., concur.

¶ 12 OPALA, Justice, with whom HODGES, and SIMMS, Justices, join, concurring in part, dissenting in part.

¶ 13 I concur in today's imposition of discipline; I would visit on the respondent a much more severe sanction.

---

6. Rule 6.16 provides: "The costs of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefore has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme court for good cause shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court."