2010 OK 67

**STATE of Oklahoma, ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Gloyd Lynn McCOY, Respondent.**

**SCBD No. 5592.**

Supreme Court of Oklahoma.

Sept. 21, 2010.

Ted D. Rossier, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for complaint.

Charles J. Watts, Oklahoma City, OK, for respondent.

WATT, J.:

¶1 In what was initially a Rule 6 but later converted to a Rule 10,[1] Rules Governing Disciplinary Proceedings, 5 O.S. 2001, Ch. 1, App. 1–A proceeding, the complainant, Oklahoma Bar Association, charged the respondent, Gloyd Lynn McCoy (McCoy/attorney), with thirteen counts of professional misconduct ranging from failure to communicate to misuse of client funds and notice of suspension by the United States Court of Appeals for the Tenth Circuit (Tenth Circuit) from accepting CJA appointments[2] for a period of one year.[3] By agree-

---

1. Report of the Trial Panel, filed May 21, 2010, p. 8. Rule 10, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 3–A [Suspension for personal incapacity to practice law.].

2. The Criminal Justice Act of 1964 (CJA/Act), 18 U.S.C.2008 § 3006A, entitled indigent defendants charged with certain federal offenses to appointed counsel. The CJA carries both a statutory and a constitutional mandate under the Sixth Amendment to the United States Constitution. *United*

ment of the parties, this Court entered an order of interim suspension pending resolution of the disciplinary action following notification that the attorney had been disbarred by the Tenth Circuit and upon grounds that the respondent alleged throughout prosecution of the cause that he was personally incapable of practicing law. In the course of disciplinary proceedings, the attorney acknowledged[4] multiple instances of misconduct involving: dishonesty, fraud, deceit, or misrepresentation; incompetence including accepting cases while under a disability; lack of diligence; failure to communicate; mishandling of funds; and the filing of untimely responses to grievance inquiries. The attorney's actions resulted in his initial suspension and subsequent disbarment by the United States Court of Appeals for the Tenth Circuit.

■ ¶ 2 We are sympathetic with and acknowledge the attorney's evident debilitating depression coupled with an attention deficit disorder and their contribution to his actions. Nevertheless, our obligation to uphold the grievance system, which exists to protect the public, must come before our compassion for the respondent.[5] Therefore, in consideration of the facts and upon *de novo* review,[6] we determine that the respondent's conduct resulting in incurable harm to the rights of those he represented, retaining of unearned fees, continued representation of clients while alleging his incapacity to do so, causing embarrassment to the legal profession and to this Court, and undermining confidence in the Bar Association and its members warrants suspension for a period of two years and one day and the payment of $4,938.55 in costs.[7]

### RELEVANT FACTS AND PROCEDURAL BACKGROUND

¶ 3 McCoy was admitted to the practice of law in 1982. Over the years, he distinguished himself in criminal proceedings and was awarded the Thurgood Marshall Award for outstanding appellate advocacy by the Oklahoma Criminal Defense Lawyers' Association in 2006.

¶ 4 In February of 2005, the attorney entered a six-month diversion program related to three grievances filed by his clients. The

*States v. Barcelon*, 833 F.2d 894, 896 (10th Cir. 1987); *Anaya v. Baker*, 427 F.2d 73 (10th Cir. 1970). The CJA contemplates that a substantial proportion of the appointments made under the Act will be to private attorneys who accept the court's appointment. 18 U.S.C.2008 § 3006A(a)(3). The CJA governs payment to attorneys accepting such appointments. 18 U.S.C. 2008 § 3006A(d). At the conclusion of representation, the appointed attorney may seek compensation by filing a claim. 18 U.S.C.2008 § 3006A(d)(5).

3. The allegations of the complaint encompass violations of the Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A, specifically: Rule 1.1 [Competent representation, legal knowledge, skill, thoroughness, and reasonable preparation.]; Rule 1.3 [Diligence and promptness in representation.]; Rule 1.4 [Reasonable consultation with and prompt reply to client inquires.]; Rule 1.5 [Reasonable fees.]; Rule 1.15 [Safekeeping of property.]; Rule 1.16 [Declining or withdrawing from representation upon occurrence of mental or physical condition altering the lawyer's ability to represent the client.]; Rule 8.1 [Failure to disclose facts necessary to correct misapprehension and to respond to a lawful demand for information.]; and Rule 8.4 [Violation of Rules of Professional Conduct, engaging in conduct involving dishonesty, fraud, or misrepresentation.]. The allegations of violation of the

Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A, alleged are: Rule 1.3 [Commission of act contrary to prescribed standards of conduct.]; and Rule 5.2 [Failure to respond timely, fully, and fairly to grievance inquires.]. **The Bar Association has received three additional grievances filed against the attorney subsequent to commencement of the instant disciplinary proceedings.**

4. See, Pretrial Order, filed March 19, 2010, setting forth agreed stipulations. This Court is not bound by the stipulations of parties in a bar disciplinary proceeding. *State ex rel. Oklahoma Bar Ass'n v. Combs*, 2008 OK 96, ¶ 11, 202 P.3d 830; *State ex rel. Oklahoma Bar Ass'n v. Besly*, 2006 OK 18, ¶ 2, 136 P.3d 590; *State ex rel. Oklahoma Bar Ass'n v. Taylor*, 2003 OK 56, ¶ 2, 71 P.3d 18.

5. *State ex rel. Oklahoma Bar Ass'n v. Spadafora*, 1998 OK 28, ¶ 33, 957 P.2d 114.

6. *State ex rel. Oklahoma Bar Ass'n v. Pacenza*, 2006 OK 23, ¶ 2, 136 P.3d 616; *State ex rel. Oklahoma Bar Ass'n v. Garrett*, 2005 OK 91, ¶ 17, 127 P.3d 600; *State ex rel. Oklahoma Bar Ass'n v. Anderson*, 2005 OK 9, ¶ 15, 109 P.3d 326.

7. Rule 6.16, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A

grievances involved conduct similar to that presented here: failure to file an appeal; failure to respond to client inquires; and failure to keep clients advised.[8] The Bar Association again began receiving grievances regarding the attorney's unprofessional performance in March of 2008. The grievances were grounded in representations McCoy undertook from March of 2005 through April of 2008, a span of three years. McCoy did not respond timely to any of the individual grievances and when responses were received they were either incomplete or inadequate. This necessitated that the respondent be deposed on September 30, 2009. The following month, the Bar Association filed a multiple count complaint.

¶ 5 The hearing before the trial panel was conducted over two days in March of this year. On May 21st, the trial panel issued its report recommending that McCoy be suspended from the practice of law for two years and one day. The same day, the Bar Association filed an application to assess costs of $4,938.55. It also is in agreement with the proposed discipline, as is the respon-

dent. A briefing schedule was established by our order of May 25, 2010 which was concluded on July 29th with the filing of the reply brief.

## JURISDICTION AND STANDARD OF REVIEW

¶ 6 It is this Court's nondelegable, constitutional responsibility to regulate the both the practice and the ethics, licensure, and discipline of the practitioners of the law. The duty is vested solely in this department of government.[9] Our determinations are made *de novo.*[10] We bear the ultimate responsibility for deciding whether misconduct has occurred and, if so, what discipline is warranted. Neither the finding of facts of the trial panel nor its view of the evidence or the credibility of witnesses bind this Court. The recommendation is merely advisory.[11] The same is true when the parties stipulate to misconduct and a recommendation for discipline.[12] Before this Court will discipline an errant attorney, misconduct must be demon-

---

8. Deposition of Gloyd L. McCoy, taken on September 30, 2009 providing in pertinent part at pp. 93–94:
 "... Q ... Now, we talked earlier in the deposition about your participation in the diversion program about five years. I'm going to hand you this document here. This is shown as *DIVERSION PROGRAM AGREEMENT* and it will be Exhibit 26. I would like you to review that and tell me whether or not that is the agreement that you signed with the bar association in February of 2005.
 A It appears to be the document I signed with them.
 Q All right. Can you give me a brief explanation as to the circumstances surrounding your entering into this agreement?
 A I'd had some complaints one the bar association was concerned about because it came from a—an inmate—I thought the inmate had said not to appeal the case and he said he did not and had written—he was a very threatening individual and he wrote the bar association a letter that said he was going to sue me and the bar association and everybody else and they were concerned about my safety, so they called me in and I'd had some complaints about not responding to people and failure to make phone calls and that type of thing, not keeping them advised of the case. That's when I first went out by myself...."
 Exhibit 20, Diversion Program Agreement with Gloyd Lynn McCoy, provides that the grievances

involved will be held in abeyance for a period of six (6) months and that if all conditions of the agreement are met, the grievances will be dismissed and no other discipline will be imposed. McCoy signed the agreement on February 5, 2005. Therefore, the conditions of the agreement would have expired on August 5, 2005.

9. Title 5 O.S.2001 § 13; *State ex rel. Oklahoma Bar Ass'n v. Combs,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Farrant,* 1994 OK 13, ¶ 13, 867 P.2d 1279; *Tweedy v. Oklahoma Bar Ass'n,* 1981 OK 12, ¶ 14, 624 P.2d 1049.

10. *State ex rel. Oklahoma Bar Ass'n v. Pacenza,* see note 6, supra; *State ex rel. Oklahoma Bar Ass'n v. Garrett,* see note 6, supra; *State ex rel. Oklahoma Bar Ass'n v. Anderson,* see note 6, supra.

11. Rule 6.15, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Besly,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Taylor,* see note 4, supra.

12. *State ex rel. Oklahoma Bar Ass'n v. Combs,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Taylor,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. McGee,* 2002 OK 32, ¶ 20, 48 P.3d 787.

strated by clear and convincing evidence.[13] To make this determination, we must be presented with a record sufficient to permit an independent, on-the-record review for the crafting of appropriate discipline.[14] The record submitted is sufficient for this Court to make the required decisions.

## COUNTS DEMONSTRATING PROFESSIONAL MISCONDUCT[15]

### Count I—Woods/Law

¶ 7 McCoy stipulated to the following facts. The respondent was hired by Judy Wood (Wood) to appeal her grandson's, Karame Law's, conviction and sentence of life imprisonment. In December of 2006, after the conviction was affirmed, Wood retained the respondent to pursue federal *habeas corpus* relief for which he was paid $3,000.00. McCoy did not file the application, did not refund the unearned fee, and cut communications with Wood. Over two years later, in March of 2008, Woods was informed that McCoy was no longer employed with his firm. Later that month, she filed a grievance with the Bar Association. In May of 2008, the respondent promised to refund the entire fee within thirty (30) days. He did not do so. The respondent acknowledged his actions violated Rules 1.1, 1.3, 1.4, 1.5, 1.15(a), 1.16(a) and 8.4(a)(c)(d), Rules Governing Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A; Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; and warrant imposition of professional discipline.

13. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Funk*, 2005 OK 26, 114 P.3d 427; *State ex rel. Oklahoma Bar Ass'n v. Kessler*, 1995 OK 32, ¶ 23, 895 P.2d 713.

14. *State ex rel. Oklahoma Bar Ass'n v. Schraeder*, see note 29, infra; *State ex rel. Oklahoma Bar Ass'n v. Perceful*, 1990 OK 72, ¶ 5, 796 P.2d 627.

15. It should be noted that McCoy stipulated to each of the facts contained in ¶s 7, 9, 11, 13, 15, 17, 18, 20–22, and 23.

16. Transcript of hearing before the trial panel, March 23, 2010, Judy Diane Woods responding to cross-examination and testifying in pertinent part at p. 64:

¶ 8 Woods testified that only after numerous attempts to contact McCoy was she informed that he no longer worked at the Riggs, Abney firm. Thereafter, Woods made multiple attempts to reach the attorney at his home. Although McCoy never returned any of her calls, he did finally respond to an e-mail sent to him by one of Woods' nieces. In his response to the grievance, he asserted that he had not promised to file for *habeas corpus* relief but had suggested that as an option. He also indicated that he would be refunding Woods' $3,000.00 within thirty (30) days. Although McCoy provided Woods with some of Law's files, she did not receive a complete set of trial transcripts and the respondent did not forward her the promised $3,000.00 despite his recognition that the funds would be important to her as Woods lives on a fixed income.[16]

### Count III—Stec/Simrak

¶ 9 The attorney stipulated that in March of 2005,[17] he accepted a fee of $500.00 from Vera Stec (Stec) to research possible post-conviction relief for her nephew, Joseph Simrak. Although McCoy retained the fee, he did not perform the promised work and he did not communicate either with Stec or Simrak. He acknowledges that this conduct violated Rules 1.1, 1.3, 1.4, 1.5, 1.15(a), and 8.4(a)(c)(d), Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A; and Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 5 O.S.2001, Ch. 1, App. 1–A.

"... Q Okay. Do you see where he states 'My intent was to return their money. That is now my intention as it seems obvious that Riggs Abney does not want the case.'
A Yes.
Q Okay. 'Therefore, I plan on returning $3,000 to Mrs. Woods.'
A Yes.
Q And then he goes on and says, 'She is on a fixed income and does not need to to pay for a meritless post-conviction application.'
A Yes...."

17. The representation was undertaken while the respondent was involved in a Diversion Program aimed at eliminating similar problems with McCoy's representation of clients. See note 8, supra.

¶ 10 Although the respondent spoke with Stec on the phone a month after he was hired, all subsequent attempts to contact McCoy by phone were unsuccessful. In November of 2008, Stec filed the complaint with the Bar Association. At some point subsequent thereto, the respondent indicated either to the Bar Association or to Stec that he would be refunding her $500.00 within a two-week period. This did not occur and had not occurred at the time of the hearing before the trial panel. In addition, Stec was convinced that the respondent's failure to act robbed her nephew of any subsequent right to request relief and violated her trust in the legal profession.[18]

### Count V—Baker

¶ 11 McCoy admits that after Aaron Baker's felony conviction was affirmed on appeal in February of 2007, Baker requested that he pursue post-conviction relief in the United States District Court for the Northern District of Oklahoma no later than the following January. After May of 2007, the respondent did not communicate with his client. Baker filed his initial grievance on July 21, 2008. Thereafter, the attorney met with Baker on or about October 1st. At that meeting, McCoy told Baker that: a) he had not filed a federal *habeas corpus* petition; b) he believed Baker might benefit from an applica-tion for post-conviction relief in the state courts; and c) he would meet with Baker every Wednesday until the post-conviction application was complete. McCoy recognizes that his conduct constituted professional misconduct in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15(a), 1.16(a), and 8.4(a)(c)(d), Rules of Professional Conduct, 5 O.S.2001 Supp.2008, Ch. 1, App. 3–A and Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

¶ 12 Baker testified before the trial panel that his father paid McCoy approximately $2,000.00 to appeal his cause and to file for *habeas corpus* relief upon the affirmance of his conviction. When Baker could not get McCoy to communicate with him regarding his case, he contacted the federal court and determined that no *habeas corpus* petition was ever filed. Baker went seventeen (17) months without having any contact with McCoy and believes that the statute of limitations has run on any opportunity for the filing of *habeas corpus* relief in the federal forum.[19]

### COUNT VII—Thelen

¶ 13 Patrick Thelen is currently incarcerated in a federal correctional facility in Illinois. McCoy admits that Thelen retained him to

18. Transcript of hearing before the trial panel, March 23, 2010, Vera Stec testifying in pertinent part at:
pp. 82–83 "... Q (By Ms. Ogden) Okay. Ms. Stec, in that exhibit, Mr. McCoy said that you would be receiving a refund of $500 by June 5th, 2009. Did that ever happen?
A No. No, that never happened...."
pp. 84–86 "... Q (By Ms. Ogden) Ms. Stec, to this date, have you received a money order or any other payment from Mr. McCoy?
A No. No, I've had no contact, other than what we just said from Mr. McCoy.
Q Okay. Did Mr. McCoy, aside from that I'll look into it, did he contact you any further regarding the status of your case—
A No.... No, not in any way, shape or form and I am heartbroken about that, because I wanted to get an appeal in before my nephew's appeal time was over and I'm afraid I didn't accomplish that and I feel bad because—the man is in jail....
Q (By Ms. Ogden) And, Ms. Stec, how do you feel about this right now?
A Well, I'm—I'm—I'm very sad and very—I just—it's just a crying shame that he couldn't at least have contacted—given me over to another attorney or something that—that my goal could have been accomplished, at least an appeal made on behalf of my nephew, something, for you know, the time and effort that I trusted him and he broke my trust totally. You think you can—you know, you trust people who are in those positions...."

19. Transcript of hearing before the trial panel, March 23, 2010, Aaron Drew Baker testifying in pertinent part at pp. 137–38:
"... Q So approximately 17 months elapsed between times that he spoke with you regarding your case?
A Yes. Yes.
Q What's the current status of your case right now? Is your—do you have any further ability to file a federal habeas petition?
A No. I'm of the understanding that my time period for filing my habeas corpus had expired upon trying to get ahold of Mr. McCoy, so I'm assuming that all my deadlines have expired...."

pursue post-conviction relief relating to an Oklahoma conviction, paying him $3,000.00 in April of 2008. When the work was not completed, Thelen first hired alternate counsel and then proceeded *pro se*. Although the attorney asserts that Thelen agreed to withdraw his grievance if McCoy would refund the $3,000.00, Thelen denies the same. In any case, although the respondent promised to refund the unearned fee, he has not done so. McCoy admits his actions constitute professional misconduct in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15(a), 1.16(a), and 8.4(a)(c)(d), Rules or Professional Conduct, 5 O.S. Supp. 2008, Ch. 1, App. 3–A and Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S. 2001, Ch. 1, App. 1–A.

¶ 14 Thelen testified that McCoy did nothing in his case and that, because of his lies, he did not feel he could believe anything the respondent told him.[20] He also denied that

he had agreed to withdraw his grievance if his money was returned.[21]

## COUNT XI—Burling

¶ 15 The respondent acknowledges that he was hired by Robert Burling (Burling) on February 21, 2008, to undertake an independent review of his case and develop a strategy for post-conviction relief. He also admits to having received $3,000.00 from Burling to do the legal work.

¶ 16 Burling testified that McCoy never did the work, did not provide any copies of drafted proposals, seemed unprepared when he would meet with him at the facility where Burling was incarcerated, missed the date for filing a rehearing petition on his affirmed conviction, and failed to appear for a number of scheduled interviews.[22] Burling hired an-

20. Transcript of hearing before the trial panel, March 23, 2010, Patrick Thelen testifying in pertinent part at pp. 192–93:
"... Q Did Mr. McCoy do what you asked him to do?
A No. Mr. McCoy did—to the contrary, he did nothing. Absolutely nothing. He lied to me. He told me he was working on it and it was just one thing after another and he put it in the mail, he put it in the mail and I didn't get it. Call me back next week and then just one big spin after another.
Q Did Mr. McCoy ever provide you with any work product or work that he had done of any kind of documentation?
A No. No...."

21. Transcript of hearing before the trial panel, March 23, 2010, Patrick Thelen testifying in pertinent part at pp. 196–97:
"... Q Mr. Thelen, did you ever offer to withdraw your grievance in return for Mr. McCoy's paying back the fee that he did not earn?
A No. The only—the only conversation McCoy—about something even close to that was he was going to attempt via the e-mails with my brother or something to try to get back some of the money. My brother, you know, I guess you guys see the e-mails, but as far as him paying me back, it—you know, I don't recall anything to the effect that—dropping a grievance or anything to that. I think at that point, we really weren't even talking anymore, because I just had enough. You couldn't believe nothing he said, so what's the point in talking?
Q And he has not paid back the fee to you, has he?
A No. No. I mean, if I may add something here, even if—he didn't tell me that I don't have a case, but for the sake of argument, if he

would have, then all he had to do was give me back my money and I could have went elsewhere, but, you know, he didn't do either of those...."

22. Transcript of hearing before the trial panel, March 23, 2010, Robert Burling testifying in pertinent part at pp. 161–65:
"... Did Mr. McCoy perform the work for which you paid him?
A No, he sure did not.
Q Did he ever provide you with any work that he had done?
A No written work. We had, I believe, four meetings after that first meeting and most of the time—let's see, four of those—three of those four meetings were when [sic] Mr. Welch primarily and he would call me and sit with me after that, and he never seemed to be prepared....
Q (By Mr. Rossier) Mr. Burling, how would you characterize Mr. McCoy's communication with you?
... A ... After my direct appeal was affirmed on May 1st, I had my nephew call Mr. McCoy and told him about the affirmation of my appeal and he appeared unscheduled on May 8th 2008, by him—and this is the only meeting I ever had by myself.... [H]e stayed only 15 minutes and this is where he told me he would review my summary opinion to see if we would have a rehearing, which is due 20 days later, which would have been May 20th. And he verbally scheduled a meeting for May 14th to discuss the rehearing which would have been due six days later.
On May 14th, he failed to show and my rehearing deadline passed on May 20th and from that meeting of May 8th, all the way up to October

other attorney to assist with the filing of his *habeas corpus* petition.[23]

## COUNT X—Richardson/Ingraham

¶ 17 Betty Richardson (Richardson) retained McCoy in April of 2008 to file federal *habeas* and post conviction relief on behalf of her nephew, John Sandy Ingraham (Ingraham). Although neither of these individuals testified before the trial panel, the respondent stipulated to the hiring and to his having been paid $5,000.00. He admits that he: did not file any application for relief and allowed the limitation period to run on Ingraham's right to file a federal *habeas* petition; never spoke with Ingraham; and did not return phone calls or respond to letters. McCoy alleges that he has made a partial refund of the fee in the amount of $1,440.00. McCoy agrees that his actions constitute professional misconduct in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15(a), 1.16(a) and 8.4(a)(c)(d), Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A, and Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

## COUNT XII—Green

¶ 18 The respondent agrees that Stephen Green (Green) hired him to file a motion in federal court and paid him $3,000.00 for his services. When the motion was denied, McCoy filed a notice of appeal with the Tenth Circuit. Thereafter, he did not communicate with his client. The attorney al-lowed Green's appeal to be dismissed for failure to prosecute. McCoy admits his conduct contradicts that required of attorneys by Rules 1.1, 1.3, 1.4, 1.5, 1.15(a), and 8.4(a)(c)(d), Rules Governing Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3–A, and Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

¶ 19 Green disputes the fee paid to McCoy. Although the respondent alleges that he was paid $3,000, Green testified that he paid him $5,000.00 from his checking account.[24] A friend of Green's, who handled his finances during Green's incarceration, believes that McCoy was given at least $9,000.00, some of which he received in cash.[25]

## COUNT XII—Tenth Circuit suspension from accepting CJA Appointments

¶ 20 McCoy acknowledges that he was appointed by the Tenth Circuit under the CJA[26] to represent a criminal defendant. The respondent was successful in getting the defendant's sentence reduced and filed an appeal of his conviction. On July 7, 2006, the Tenth Circuit clerk issued an order directing the respondent to perfect the appeal. When McCoy did not comply, a subsequent order was issued instructing him to comply no later than August 11, 2006. The respondent complied some thirteen days later than the ordered date. McCoy did not file an opening brief on the due date of February 27, 2007, nor did he request an extension. On March 5, 2007, the clerk issued an order regarding the missed deadline, a warning of possible

1st, he scheduled meetings and never showed again. I believe eight more—a total of eight more meetings that he failed to show...."

**23.** Transcript of hearing before the trial panel, March 23, 2010, Robert Burling testifying in pertinent part at p. 163:

"... Q Did you then file a federal habeas petition pro se?
A Well, I filed a—I hired an attorney named Jim McClure, Muskogee, Oklahoma, and we filed in the Western District of Oklahoma City District Court on February 22, 2010, just recently...."

**24.** Transcript of hearing before the trial panel, March 23, 2010, Stephen Randall Green testifying in pertinent part at p. 103:

"... Q All right. How much did you pay Mr. McCoy?

... A $5,000...."

**25.** Transcript of hearing before the trial panel, March 23, 2010, Greg Nieto testifying in pertinent part at pp. 512–13:

"... Q (By Mr. Rossier) Once again, the question was how much total money do you believe you paid to Mr. McCoy on Mr. Green's behalf?
A Just going back in an estimate, I was calculating, I think around $9,000 all total.
Q And how was that paid to Mr. McCoy? Was it paid in cash?
A Initially, there were a couple of checks from other sources from other friends and then after that, it was cash, yes, sir. And then the final payment was actually a cashier's check in regards to a final appeal and that was directly from Mr. Green's bank...."

**26.** See note 2, supra.

disciplinary action, and gave McCoy until March 15th to file the brief. On that date, the respondent requested an extension and was granted until April 18th. He did not then file the brief nor did he request an extension. The clerk sent McCoy another order on April 25, 2007 giving him two options: the first was to file the brief by May 9th and seek leave for the late filing; and the second was to show cause why he should not be referred to a disciplinary panel.

¶ 21 On May 9, 2007, McCoy electronically filed a document he calls a "show cause response." A hard copy was filed approximately a week later. Asserting that he was suffering from a medical condition, the respondent requested an extension to May 21st to file an opening brief. The respondent admits that the document he attempted to file on May 21st was defective in several respects. Although he was given until June 8, 2007 to correct those errors, McCoy did not do so nor did he file anything further in the cause.

¶ 22 An order issued on July 2nd, advising McCoy he was being referred to a disciplinary panel for negligence and failure to follow orders of the court. He was again directed to file a corrected brief by July 9, 2007. Instead, on the following day, he requested an extension although he had been advised no further delays would be allowed. McCoy did not file a corrected brief and was suspended from accepting CJA appointments for a year. The attorney acknowledges that his conduct constitutes professional misconduct in violation of Rules 1.1, 1.3, 1.16(a), 3.2, and 8.4(a)(c)(d), Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 1-A, and Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 3-A.

### COUNTS II, IV, VI, VIII, XI—Failure to properly and adequately respond to the General Counsel regarding multiple grievances.

¶ 23 McCoy admits that he did not respond timely or adequately to the Woods, Stec,

Baker, Thelen, and Richardson grievances although the Bar Association gave him liberal extensions and multiple opportunities before finally noticing him for a deposition. In some instances, the responses he gave did not coincide with the testimony elicited from his clients before the trial panel in relation to the return of files and promises to refund unearned fees. The respondent acknowledged that his conduct violated Rules 8.1(b) and 8.4(a)(c), Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 3-A and Rules 1.3 and 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1-A.

¶ 24 Rule 8.1 provides that a lawyer shall not knowingly make a false statement of material fact nor fail to respond to a lawful demand for information from a disciplinary authority. Under Rule 1.3, the commission of an attorney of any act contrary to prescribed standards of conduct is grounds for discipline. Violation of this rule brings discredit on the legal profession.[27] The provisions of Rule 8.4 pertinent here define professional misconduct as the violation of the professional rules and engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. Rule 5.2 allows an attorney faced with a grievance twenty (20) days to file a written response containing a full and fair disclosure of all the facts and circumstances pertaining to the respondent's alleged misconduct.

### MITIGATION AND ENHANCEMENT

¶ 25 Mitigating circumstances may be considered in the process of assessing the appropriate quantum of discipline.[28] When mental or physical conditions are presented as mitigating factors for assessment of one's culpability, there must be a causal relationship between the conditions and the professional misconduct.[29] **Though emotional, psychological, or physical disability may**

---

**27.** *State ex rel. Oklahoma Bar Ass'n v. Chapman,* 2005 OK 16, ¶ 11, 114 P.3d 414.

**28.** *State ex rel. Oklahoma Bar Ass'n v. Schraeder,* see note 29, infra; *State ex rel. Oklahoma Bar Ass'n v. Colston,* 1989 OK 74, ¶ 20, 777 P.2d 920;

*State ex rel. Oklahoma Bar Ass'n v. Raskin,* 1982 OK 39, ¶ 17, 642 P.2d 262.

**29.** *State ex rel. Oklahoma Bar Ass'n v. Schraeder,* 2002 OK 51, ¶ 27, 51 P.3d 570; *State ex rel. Oklahoma Bar Ass'n v. Giger,* 2001 OK 96, ¶ 15, 37 P.3d 856.

serve to reduce the actors ethical culpability, it will not immunize one from imposition of disciplinary measures that are necessary to protect the public.[30]

¶ 26 McCoy presented medical proof from both his general practitioner and his psychiatrist that he suffers from various physical ailments along with depression and attention deficit disorder present now and during the time of the misconduct. Both physicians opine that the attorney is presently incapable of practicing law because of his physical and mental condition.

¶ 27 The McCoys have three children, all of whom require unusual levels of parental supervision or involvement. Their adult son suffers from autism and epilepsy making it difficult for him to hold a job and requiring constant monitoring. Their two daughters were adopted from Guatemala and have their own special needs.

¶ 28 Following a ten-year association with the Coyle law firm, the attorney was terminated in 2003. The ending of this professional arrangement created a financial strain. For two years, McCoy operated as a solo practitioner. In 2005, he was hired by Riggs, Abney, Neal, Turpen, Orbison and Lewis at what he considered a salary not commensurate with his twenty-five years of experience. McCoy's employment ended in January of 2008 when the attorney was approached by a member of the firm during trial and told his services were no longer needed.

¶ 29 Approximately eight months after leaving the second firm and having moved his practice into his home, the respondent's wife was admitted to the hospital and diagnosed with sepsis. Although she survived, she was left in a debilitated state and required subsequent medical treatment for an eye problem exacerbated by her diabetes. From January 2008 until February of the next year, the respondent was the primary care giver for his wife and children. He was faced with large medical bills for which there was no insurance coverage.

¶ 30 In February of 2009, McCoy undertook the criminal representation of a client in Tulsa. Although he expected this relationship to provide his family with financial relief, it did not do so. Rather, it created additional financial difficulties and emotional strain. His commuting vehicle became disabled and he was required to spend increasing time away from home.

¶ 31 Although neither McCoy's psychiatrist nor his physician testified before the trial panel concerning his mental and physical condition, the record leaves little doubt that McCoy suffers from depression, attention deficit disorder, some degree of limb tremor, and back pain associated with degenerative disc disease.[31] However, **McCoy's pleas for mercy are counterbalanced by what appear to be a failure to recognize the gravity of his transgressions and an inability to take responsibility for his actions.**

¶ 32 The respondent blames his lack of performance on a variety of factors: his physical and mental condition; his former law firm and assistant and the lack of support he received therefrom; his deep involvement in federal criminal proceedings; a "jail house lawyer" who encouraged complaints be filed against him; and his lack of a legal assistant during the time periods when the grievances were being filed. He accuses the Bar Association of attempting to make two charges out of one with the inclusion of multiple counts relating to his failure to respond and argues these transgressions were somehow "cured" by his appearance for a deposition made necessary by his lack of cooperation.[32] Although McCoy stipulated to acts of misconduct in the pretrial order,[33] he denied that his acts constituted misconduct because

---

**30.** *State ex rel. Oklahoma Bar Ass'n v. Schraeder*, see note 29, supra.

**31.** See, Defendant's exhibit 8, a letter dated March 12, 2010 authored by Dr. Vicki White, indicating that McCoy suffers from attention deficit disorder and major depressive disorder and Defendant's exhibit 9, a letter written by Stephen G. Lindsey, M.D., detailing the respondent's physical and mental status. Both doctors opine that the attorney is currently unable to practice law.

**32.** See, Gloyd Lynn McCoy's Answer to Complaint filed on December 30, 2009.

**33.** See, ¶ 1 and note 4, supra.

they were not intended to cause harm.[34] While on the one hand, McCoy asserts that he was incapable of the practice of law during the period in which any misconduct occurred, he insists that, during his "period of problems," he was able to provide a "vigorous defense" for a client during a two-week federal jury trial[35] and initially asserted that any suspension which might be imposed should be stayed[36] and the cause should be remanded for McCoy to enter a diversion program.[37] With the filing of his answer brief, the respondent conceded that a two year and one day suspension would be appropriate.

■■■ ¶ 33 **A number of the arguments on which McCoy relies are unconvincing.** A lawyer's failure to respond to the Bar Association's investigative inquiries is a serious offense.[38] The attorney's inaction in not responding to the grievances in a timely manner caused the Bar to utilize greater resources in time and money and created a substantial delay in addressing the complaints of his clients who had already suf-

fered from the respondent's procrastination.[39]

■■■ ¶ 34 In *State ex rel. Oklahoma Bar Ass'n v. Briggs,* 1999 OK 76, ¶ 22, 990 P.2d 869, we admonished the attorney for his failure to respond in a timely manner to the Bar Association's requests for information. In so doing, we issued this warning:

"... Let this serve as a reminder to attorneys that failure to timely respond to the Bar's request for information is *in itself* grounds for discipline...." [40] [Emphasis in original.]

Furthermore, it is not an anomaly that this cause should present multiple counts based on the failure to respond. Separate counts for such action have routinely been considered by this Court.[41] Furthermore, an attorney's misconduct need not be intended to harm for discipline to result.[42] Finally, we are unconvinced that entry into a diversion program would be sufficient to deter the attorney from similar actions. He was previously given that opportunity after the filing of three grievances.[43] Although one of the

**34.** See, Gloyd Lynn McCoy's Answer to Complaint filed on December 30, 2009.

**35.** Trial Brief of Respondent Gloyd Lynn McCoy, filed March 5, 2010, providing in pertinent part at pp. 9–10:
"... During Mr. McCoy's period of problems, he was able to conduct a two-week federal jury trial in the United States District Court for the Northern District of Oklahoma before the Honorable Claire Egan. Although the jury found the client guilty, Mr. McCoy put up a vigorous defense for his client...."

**36.** Trial Brief of Respondent Gloyd Lynn McCoy, filed March 5, 2010, providing in pertinent part at p. 11:
"... Any suspension should be stayed...."

**37.** Trial Brief of Respondent Gloyd Lynn McCoy, filed March 5, 2010, providing in pertinent part at p. 15:
"... Remanding this matter back to the OBA for the purpose of requiring Mr. McCoy to enter a diversion program would be appropriate...."

**38.** *State ex rel. Oklahoma Bar Ass'n v. Schraeder,* see note 29, supra; *State ex rel. Oklahoma Bar Ass'n v. Robb,* see note 41, infra.

**39.** *State ex rel. Oklahoma Bar Ass'n v. Hulett,* 2008 OK 38, ¶ 20, 183 P.3d 1014.

**40.** Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A providing in pertinent part:
"... The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline...."

**41.** See, *State ex rel. Oklahoma Bar Ass'n v. Sheridan,* 2003 OK 80, 84 P.3d 710; *State ex rel. Oklahoma Bar Ass'n v. Schraeder,* see note 29, supra; *State ex rel. Oklahoma Bar Ass'n v. Brewer,* 1999 OK 101, 998 P.2d 605; *State ex rel. Oklahoma Bar Ass'n v. Robb,* 1997 OK 84, 942 P.2d 196.

**42.** See, *State ex rel. Oklahoma Bar Ass'n v. Giessmann,* 1997 OK 146, ¶ 9, 948 P.2d 1227.

**43.** Deposition of Gloyd L. McCoy, September 30, 2009, providing in pertinent part at pp. 93–94:
"... Q ... Now, we talked earlier in the deposition about your participation in the diversion program about five years ago. I'm going to hand you this document here. This is shown as *DIVERSION PROGRAM AGREEMENT* ...
A All right. Can you give me a brief explanation as to the circumstances surrounding your entering into this agreement?
A I'd had some complaints, one the bar association was concerned about because it came

conditions of the agreement was that the respondent · continue receiving counseling with his psychiatrist weekly for a period of at least five-and-one half months, participation in the program did nothing to deter his actions here. **It is instructive that one of the grievances filed originated from a cause undertaken during the same time period in which McCoy was participating in the program.**[44]

¶ 35 **RESPONDENT'S MISCONDUCT WARRANTS SUSPENSION FOR A PERIOD OF TWO YEARS AND ONE DAY AND THE PAYMENT OF COSTS OF THE PROCEEDING.**

 ¶ 36 Discipline is administered to preserve public confidence in the bar. Our responsibility is not to punish but to inquire into and gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts, and of the legal profession. Discipline is imposed to maintain these goals rather than as a punishment for the lawyer's misconduct.[45] Disciplinary action is also administered to deter the attorney from similar future conduct and to act as a restraining vehicle on others who might ·consider committing similar acts.[46] Discipline is fashioned to coincide with the restrictions imposed upon other lawyers for acts of professional misconduct.[47] Although this Court strives to be even-handed and fair in disciplinary matters, discipline must be decided on a case-by-case basis because each situation involves unique transgressions and mitigating factors.[48]

¶ 37 Similar causes where impairment was not an issue have resulted in discipline ranging from public censure to disbarment.[49] In

from a—an inmate, because the inmate—I thought the inmate had said not to appeal the case and he said he did and he had written— he was a very threatening individual and he wrote the bar association a letter that said he was going to sue me and the bar association and everybody else and they were concerned about my safety, so they called me in and I'd had some complaints about not responding to people and failure to make phone calls and that type of thing, not keeping them advised of the case...."

Such programs are provided for in Rule 5.1, Rules Governing Disciplinary Proceedings, 5 O.S. Supp.2003, Ch. 1, App. 1–A, and include, but are not limited to: Lawyers Helping Lawyers, psychological counseling, continuing legal education programs, and professional responsibility classes.

44. The diversion agreement was signed in February of 2005. See, ¶ 4, supra, for the time spans out of which the grievances we consider here grew.

45. *State ex rel. Oklahoma Bar Ass'n v. Phillips,* 2002 OK 86, ¶ 21, 60 P.3d 1030; *State ex rel. Oklahoma Bar Ass'n v. Bedford,* 1997 OK 83, ¶ 18, 956 P.2d 148; *State ex rel. Oklahoma Bar Ass'n v. English,* 1993 OK 68, ¶ 12, 853 P.2d 173.

46. *State ex rel. Oklahoma Bar Ass'n v. Pacenza,* see note 6, supra; *State ex rel. Oklahoma Bar Ass'n v. Badger,* 1995 OK 113, ¶ 13, 912 P.2d 312; *State ex rel. Oklahoma Bar Ass'n v. Hall,* 1977 OK 117, ¶ 12, 567 P.2d 975.

47. *State ex rel. Oklahoma Bar Ass'n v. Patterson,* 2001 OK 51, ¶ 29, 28 P.3d 551; *State ex rel. Oklahoma Bar Ass'n v. Eakin,* 1995 OK 106, ¶ 0,

914 P.2d 644; *State ex rel. Oklahoma Bar Ass'n v. Bolton,* 1994 OK 53, ¶ 16, 880 P.2d 339.

48. *State ex rel. Oklahoma Bar Ass'n v. Combs,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Doris,* 1999 OK 94, ¶ 38, 991 P.2d 1015; *State ex rel. Oklahoma Bar Ass'n v. Rozin,* 1991 OK 132, ¶ 10, 824 P.2d 1127.

49. *State ex rel. Oklahoma Bar Ass'n v. Jenkins,* 2001 OK 54, 27 P.3d 91 [Two year and one day suspension imposed for neglecting clients, not keeping clients informed, charging unreasonable fees, and misrepresenting facts to a federal court.]; *State ex rel. Oklahoma Bar Ass'n v. Hopkins,* 2000 OK 15, 995 P.2d 1153 [Repeated neglect of client matter for which fees were received, total disregard of disciplinary proceedings, and failure to take complete responsibility for actions warranted disbarment.]; *State ex rel. Oklahoma Bar Ass'n v. Dunlap,* 2000 OK 8, 995 P.2d 1148 [Failure to meet with client or file petition for post-conviction relief while accepting retainer warranted 30–day suspension.]; *State ex rel. Oklahoma Bar Ass'n v. Spadafora,* see note 5, supra [Suspension of two years and one day and costs appropriate for attorney misconduct involving failure to respond to grievances, failure to provide competent representation, twice failing to act with reasonable diligence and promptness, failing to keep client reasonably informed, charging fees that were unreasonable because he failed to do all of work for which he charged, and conduct involving dishonesty or deceit.]; *State ex rel. Oklahoma Bar Ass'n v. Meek,* 1996 OK 119, 927 P.2d 553 [Disbarment and payment of costs warranted for charging fee unsupported by work product, failure to provide competent representation, neglecting legal mat-

instances involving attorneys determined to be incapable of practicing law, the breadth of discipline has been from public censure to suspensions of two years and one day.[50] Such suspensions are tantamount to disbarment in that the suspended lawyer must follow the same procedures for readmittance as would a disbarred attorney.[51]

¶ 38 In considering the appropriate discipline to visit on McCoy here, we find two cases particularly instructive: *State ex rel. Oklahoma Bar Ass'n v. Wright*, 1997 OK 119, 957 P.2d 1174 and *State ex rel. Oklahoma Bar Ass'n v. Beasley*, 2006 OK 49, 142 P.3d 410. In both cases, the attorney was suspended from the practice of law for two years and one day. In addition, both attorneys committed acts of misconduct similar to those McCoy has admitted to here while afflicted with some level of disabling condition.

¶ 39 In *Wright*, the attorney was charged with nine counts of misconduct involving estate matters, including failing to act with reasonable diligence and promptness, failing to communicate with clients, charging unreasonable fees, and failing to respond to repeated requests for information regarding allegations and grievances filed with the Bar Association. The discipline imposed took into account the attorney's evidence of depression.

¶ 40 The attorney in *Beasley* failed to perform legal services for clients, failed to communicate with clients, and failed to respond to Bar Association inquiries. His actions were found to have violated professional conduct rules requiring competent representa-

---

ters, making misrepresentation to Bar Association and clients, engaging in conduct prejudicial to justice, failing to abide by conditions of former suspension, and failure to cooperate in grievance process.]; *State ex rel. Oklahoma Bar Ass'n v. Houston*, 1996 OK 51, 917 P.2d 469 [Three year suspension appropriate where lawyer failed to provide competent representation, act with diligence and promptness, and to keep client reasonably informed along with unauthorized removal of probate funds from safekeeping and failure to timely file bankruptcy while misrepresenting that appeal of felony conviction had been filed.]; *State ex rel. Oklahoma Bar Ass'n v. McCoy*, 1996 OK 27, 912 P.2d 856 [Disbarment appropriate where attorney admitted violations requiring attorney provide competent representation, keep client reasonably informed, act with reasonable diligence and promptness, make reasonable efforts to expedite litigation, and failure to respond to grievance inquires.]; *State ex rel. Oklahoma Bar Ass'n v. Phillips*, 1990 OK 4, 786 P.2d 1242 [Neglect of legal matter, failure to answer grievance, and failure to respond to lawful demand for information from disciplinary authority warranted suspension for three years.]; *State ex rel. Oklahoma Bar Ass'n v. Garvin*, 1989 OK 97, 777 P.2d 926 [Failure to initiate lawsuit, charging $5,000 retainer, refusing to return retainer or documents, failure to inform client, and failure to timely respond to grievances warranted public censure.]; *State ex rel. Oklahoma Bar Ass'n v. Raskin*, 1982 OK 39, 642 P.2d 262 [Practice of deceit and neglect of clients' legal affairs and the commingling and conversion of clients' funds, warrants disbarment, notwithstanding an otherwise unblemished legal career and a willingness to make restitution.]; *State ex rel. Oklahoma Bar Ass'n v. Lowe*, 1982 OK 20, 640 P.2d 1361 [Neglect of client's needs, misuse of

client's money, and fabrications told to a client warrant suspension from practice of law for two years.].

50. *State ex rel. Oklahoma Bar Ass'n v. Beasley*, 2006 OK 49, 142 P.3d 410 [Considering attorney's alcohol addiction, attorney's failure to perform legal services, failure to communicate, and failure to respond to Bar Association investigations warranted suspension of two years and one day.]; *State ex rel. Oklahoma Bar Ass'n v. Hummel*, 2004 OK 30, 89 P.3d 1105 [Attorney subject to clinical depression suspended for one year for failure to communicate, failure to turn over client files, entering into settlement agreement without authority, and failure to return unearned funds where previously having received two public reprimands.]; *State ex rel. Oklahoma Bar Ass'n v. Bolusky*, 2001 OK 26, 23 P.3d 268 [Misrepresentation to three clients, failure to respond to Bar Association on multiple occasions, when accompanied by the stabilized condition of attorney's attention deficit disorder warranted suspension of two years and one day.]; *State ex rel. Oklahoma Bar Ass'n v. Southern*, 2000 OK 88, 15 P.3d 1 [Attorney disabled by untreated B12 disorder disciplined by public censure and imposition of probation for repeated neglect of clients and their cases and failure to cooperate in grievance process.]; *State ex rel. Oklahoma Bar Ass'n v. Wright*, 1997 OK 119, 957 P.2d 1174 [Despite evidence of depression, misconduct in nine estate matters, failure to act with reasonable diligence and promptness, failure to communicate with clients, charging unreasonable fees, and failure to respond to allegations and grievances filed by Bar Association warrant suspension for two years and one day.].

51. Rule 11.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1-A; *State ex*

tion, diligence and promptness, adequate communication with clients, refund to clients of unearned fees, and responding to disciplinary investigations. In addition, the attorney violated the rule prohibiting lawyers form engaging in conduct involving dishonesty, fraud, deceit, or misrepresentations and rules governing disciplinary proceedings. In *Beasley*, we took into account the fact that the evidence supported a finding that the attorney's professional misconduct stemmed from spiraling personal problems and his addiction to alcohol.

¶ 41 The trial panel determined that McCoy was incapable of practicing law as defined under Rule 10, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A. It recommended a suspension of two years and one day. The Bar Association joins in the disciplinary recommendation. As discussed previously, the Tenth Circuit disbarred the respondent for conduct remarkably similar to the counts presented here, *i.e.* failure to timely file an appeal in a criminal proceeding or to respond to an order of that court regarding the imposition of discipline. On June 1, 2010, we entered an agreed order of interim suspension based upon the disbarment in the Tenth Circuit and upon the attorney's contentions that he was personally incapable of practicing law under Rule 10.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A. **It is noteworthy that even in agreeing to the suspension, the attorney appeared to contend that he was able to provide some level of competent representation to his clients as McCoy sought that the suspension order contain** **exceptions for him to file a petition in error in one cause and to obtain new counsel in three pending causes.**

¶ 42 We agree with the recommendation of the trial panel, the Bar Association, and the respondent. Suspension for two years and one day is consistent with discipline imposed upon other lawyers committing similar conduct. McCoy can utilize this time period to address his mental and physical disabilities and ensure that he is capable of the ethical practice of law before seeking reinstatement under Rule 11, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A. In addition, discipline having been imposed, the respondent stands charged with the payment of costs in the proceeding of $4,938.55.[52]

¶ 43 We cannot accede to McCoy's request that the suspension be retroactive to the date the order of interim suspension entered. We are impressed by McCoy's repayment of in excess of $15,000.00 in unearned fees. Nevertheless, it does not appear that all clients have been made whole. More worrisome, is the fact that the respondent may have misrepresented the status of his case before the Tenth Circuit regarding his federal disbarment.[53] Ultimately, however, our decision not to apply the suspension retroactively rests on McCoy's failure to comply with all provisions of the interim suspension order filed on June 1, 2010.[54]

## CONCLUSION

¶ 44 Clear and convincing evidence exists demonstrating that McCoy violated multiple

---

rel. *Oklahoma Bar Ass'n v. Pacenza,* see note 6, supra.

52. Rule 6, 16, Rules Governing Disciplinary proceedings, see note 7, supra.

53. See, Complainant's Reply Brief, filed on July 29, 2010, providing in pertinent part on p. 3:
"... In his brief, Respondent states that 'A hearing on the Tenth Circuit matter is scheduled for January, 2011.' *See Respondent's Answer Brief,* Proposition I (p. 3). The OBA respectfully requests that this Court take judicial notice of the docket of the 10th Circuit Court of Appeals in *In re: Gloyd L. McCoy,* Case No. 10–802. The last entry on the docket is that Court's Order of April 15, 2010, *denying* McCoy's Motion for Rehearing or to Vacate

Order of Disbarment. No further filings exist in that matter, and no further proceedings have been set...." [Emphasis in original.]

54. See, Complainant's Reply Brief, filed on July 29, 2010, providing in pertinent part on p. 3:
"... McCoy has violated this Court's Order of Interim Suspension by failing to comply with Rule 9, 1, Rules Governing Disciplinary Proceedings ('RGDP'), 5 O.S.2001 Ch. 1, App. 1–A. *See Order of Interim Suspension,* 2010 OK 42. Rule 9.1 requires that Respondent file an affidavit with the Court within twenty (20) days of the Order, indicating that he has complied with the rule and outlining the steps he has taken to so comply. The Order was entered on July 1, 2010. *Id.* McCoy has not filed the required affidavit...." [Emphasis in original.]

rules of professional conduct and disciplinary rules by which each member of the Bar Association is bound.[55] We conclude that the respondent's professional misconduct warrants a suspension of his license to practice law of two years and one day and the imposition of costs. As a precondition to reinstatement, McCoy shall: comply with Rule 11, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; demonstrate that he no longer suffers from mental and physical conditions rendering him incapable of the practice of law; refund the unearned fees described in the disciplinary counts through payment either to clients or to the Client Security Fund if restitution has been made on his behalf; and pay costs of these proceedings in the amount of $4,938.55.

**RESPONDENT SUSPENDED AND ORDERED TO PAY COSTS OF THE PROCEEDING IN THE AMOUNT OF $4,938.55.**

EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, KAUGER, WATT, WINCHESTER, COLBERT, REIF, JJ., concur.

OPALA, J., dissenting in part.

I would disbar the respondent.

**55.** *State ex rel. Oklahoma Bar Ass'n v. Pacenza,* 6, supra; *State ex rel. Oklahoma Bar Ass'n v. Gar-* *rett,* see note 6, supra; *State ex rel. Oklahoma Bar Ass'n v. Anderson,* seen note 6, supra.